## THE MELBOURN P. SMITH.

### THE ONTARIO.

#### (District Court, E. D. Virginia. February 18, 1919.)

1. COLLISION ⟫85—VESSELS IN FOG—EVIDENCE AS TO SIGNALS.

   Positive testimony of the officers and others on board that the correct signal was given by a schooner at night in fog, shortly before collision, showing the tack she was on, cannot be overcome by testimony of those on the other vessel, half a mile away, as to the signal heard by them.

2. COLLISION ⟫82(2)—STEAM AND SAILING VESSEL IN FOG—EXCESSIVE SPEED.

   A collision at sea at night in a fog between a steamer and schooner *held* due solely to, the fault of the steamer, which was the burdened vessel and admittedly going at 9 or 10 knots when she saw the schooner half a mile away, after hearing her fog signals for some time.

In Admiralty. Suit for collision by R. J. Leseman, master of the schooner Melbourn P. Smith, against the steamship Ontario, with cross-libel. Decree for libelant.

Edward R. Baird, Jr., of Norfolk, Va., for the Melbourn P. Smith.
Hughes, Little & Seawell, of Norfolk, Va., for the Ontario.

WADDILL, District Judge. This litigation involves a collision between the sailing ship Melbourn P. Smith, and the steamship Ontario, which occurred about a quarter past 12 on the morning of the 21st of March, 1918, in the Atlantic Ocean, some 30 miles to the northward and eastward of Cape Charles Light. The schooner was a four-master, en route from New York to Newport News, for a cargo of coal. The Ontario was one of the Merchants' & Miners' Transportation Company line of steamers en route from Norfolk to Boston. The weather was thick, rain especially heavy, and the wind blowing 30 miles an hour from the eastward.

The material facts, save as to whether the schooner was sounding a signal of one blast, indicating it was on the starboard tack, or two blasts, indicating it was on the port tack, are not in serious dispute. The collision occurred, in the main, as claimed by the libelant. That the weather was thick, that each vessel was giving appropriate fog

signals, as they had been doing for some time prior to the collision, and that the lights of the schooner were seen half a mile off before the collision, are facts admitted, as is also that the steamship, upon observing the light of the schooner, which was then on the port tack half a mile away, heading offshore, gave the appropriate danger signal, but too late to avert the collision.

There is some difference in the evidence, as to the speed at which the vessels were proceeding, the libelant's testimony being that the Ontario was making from 12 to 14 knots an hour, whereas the steamship admits she was making 9 to 10 knots. The schooner claims to have been making 2 knots, whereas the steamship says she was making perhaps about 7 knots at the time of the collision.

There is a sharp conflict in the testimony as to what signal the schooner was giving shortly before the collision, as indicating the tack she was on. The steamship insists that the schooner only sounded one blast of its horn, indicating that it was going to the north or northeastward on the starboard tack, whereas it was actually on the port tack, and heading to the south or southeastward, and that that fault of navigation by the schooner was the sole cause of the collision. The steamship's owners admit that, if the schooner was giving the appropriate port tack signal of two blasts, the steamship is liable for the collision.

Which signal was being given by the schooner presents a clear issue of fact, which must be determined by the court in the light of all the facts and circumstances of the case, and the reasonable inferences to be drawn from the testimony. The evidence of the officers and crews of each vessel examined supports the contentions of their respective ships. The steamship also examined two of her passengers, the evidence of one of whom strongly sustains her contention as to the signals heard by the steamship's witnesses. That the schooner was actually on the port tack, as it had been for some hours previously, is not disputed, and those on board of her, including her master, wheelsman, and lookout, positively support the schooner's contention that she was properly sounding two blasts of her horn, as claimed by her, as do all the witnesses examined in her behalf.

[1] The case turns, as far as this testimony is concerned, upon whether the court will accept their version, or that of the witnesses, including the passengers, for the Ontario, who were approximately a mile away, as to what they heard. Testimony of witnesses from a ship as to what signals were actually sounded, cannot be lightly ignored because some one from another ship, some distance off, claims to have heard different signals. Especially is this true, as here, where the signals claimed to have been sounded are those which should have been given upon the tack on which the vessel then was. To have given signals indicating the vessel was proceeding in the direction opposite from the one she was actually on would have been gross fault and criminal negligence, involving the loss of the ship and the lives of all on board.

The court cannot see its way clear to disregard this testimony, and accept that of witnesses from the Ontario, including the passenger,

whose mind at the time was admittedly distracted by other things, especially considering the distance they were away, and their liability to have misunderstood or confused the signal, indicating the tack on which the schooner was, with that of fog signals then being sounded. This conclusion, as conceded by the respondent, the Ontario, effectually disposes of the case.

[2] Moreover, the steamship was the burdened vessel, and there was imposed on her the obligation to avoid collision, as well as the risk of collision with this schooner. She admits seeing the latter's lights half a mile off, and had heard its signals for a short time before; and she cannot escape liability under those circumstances, while navigating in a fog at the speed she admits she was going. There is no dispute as the prevalence of the fog, nor that the sailing vessel, whose fog signals had been heard, was ahead enveloped therein; and where the steamship navigated at such speed as not to be able to avoid hazards from a vessel hidden in the fog, arising either from eccentricities of navigation or misunderstanding of signals, as seems to have been the case here, she cannot avoid the consequences of her conduct. She not only had warning and knowledge of the presence of the schooner, but actually discovered its lights when half a mile away, and, had she then been proceeding at the moderate rate of speed contemplated by law, she doubtless would have avoided the disaster, which she was unable to do at the high rate of speed she was maintaining.

It follows, from what has been said, that the Ontario is solely responsible for the collision, and a decree so holding will be entered on presentation.